## Case No. 2,536.

### The CAYUGA.

### [1 Ben. 171.]¹

District Court, E. D. New York. May, 1867.²

COLLISION IN HUDSON RIVER — FERRY BOAT AND STEAMBOAT—VESSELS CROSSING.

1. Where a steamboat was coming down the Hudson river, and approached the track of a ferry boat which was crossing from Hoboken to New York, and stopped her engine, but started it up again when the ferry boat was directly ahead of and close to her, and struck the ferry boat on her port quarter, and the pilot of the steamboat testified that he made no attempt to swing his bow to starboard, although a swing of ten or fifteen feet would have carried him clear, and excused his doing nothing by saying he had not time to do anything, while other witnesses testified that he did shift his wheel and was swinging to west at the time of the blow. _Held_, that the ferry boat, upon seeing the steamboat stop her engine, was entitled to consider that she intended to allow the ferry boat to pass her bows, and to act accordingly. The ferry boat was therefore free from fault in keeping on.

2. The starting of the steamboat's engine again in such circumstances, was a fault on her part.

3. If the pilot's excuse for not sheering be held good, it shows the vessels in such close proximity as to make clearly manifest the impropriety of his starting the engine. If it is not held good, then he was in fault in not attempting to sheer; and if, as stated by other witnesses, he did sheer, his statement, on which the claimant chiefly relies, is discredited.

In admiralty.

W. A. Fuller, for libellants.

C. Van Santvoord, for claimant.

BENEDICT, District Judge. This is a case of collision. The libellants are the owners of the Hoboken ferry boat, James Watt, and proceed against the Hudson river towboat Cayuga, to recover for injuries received by the ferry boat on the 13th of June, 1866.

The place of the collision was near the middle of the Hudson river, about opposite Robinson street. The tide was ebb. The weather was clear, and the time was about four o'clock in the afternoon. The course of the Cayuga had been from her berth at the foot of Desbrosses street on the New York side down to Hubert street, when she rounded up the river, expecting to pick up a boat there, but the boat being unable to get out, the Cayuga again rounded out and down the river on her way to the Battery, to

make up her tow. Shortly after heading down, she came in contact with the ferry boat, which was proceeding upon one of her regular trips from Hoboken to New York, striking the larboard quarter of the ferry boat some ten or fifteen feet from the stern.

The claim on the part of the Cayuga is, that when she rounded out and down from Hubert street, the ferry boat was further up the river and going at a greater speed than the Cayuga; that the ferry boat came down upon the Cayuga's starboard quarter, and then straightened down upon a course parallel with that of the Cayuga, and about two lengths outside of her; that this course was held by the ferry boat until her stern was even with the Cayuga's bow, when she sheered sharp to east across the course of the latter, and so close that there was not time for the Cayuga to reverse her engine or swing to west, and consequently the vessels came in contact.

On the part of the ferry boat it is claimed that the two vessels were approaching upon converging lines, the ferry boat crossing from Hoboken and the Cayuga heading for the Jersey side just below Jersey City; that the ferry boat was at the outset farther down the river than the Cayuga, but that the latter was going the faster of the two; that the ferry boat held a straight course, headed for about the foot of Liberty street, and as she was outside of and upon the starboard hand of the Cayuga, it was the duty of the latter to avoid her; that the Cayuga accordingly did stop her engine when the boats were at such distance apart as would have enabled the ferry boat to pass, but started it again before the ferry boat was out of the way, and so ran into her.

The voluminous, and in many aspects contradictory, testimony introduced in support of these respective theories has been examined with care, but as I view the case it is necessary to consider only a single feature of it. I consider it to have been satisfactorily shown that after the Cayuga had rounded out and down the river from Hubert street, and when the ferry boat was in plain sight crossing the river upon a regular and known trip from Hoboken to New York, the engine of the Cayuga was stopped and again started when the ferry boat was directly ahead of and close to her.

Now, whether the courses and speed of the two vessels up to this point had been as contended for by the libellant or the claimant, the ferry boat being, as she was, a ferry boat and in plain sight, upon seeing the Cayuga stop her engine, became entitled to consider that the Cayuga intended to allow her to pass upon her trip, and to act accordingly. There was therefore no fault on the part of the ferry boat in keeping on and passing the bows of the Cayuga. Such a course was to have been expected

---

¹ [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

² [Affirmed in Case No. 2,537.]

when the Cayuga stopped, and it would have entailed no danger of a collision had not the Cayuga started her engine again before the ferry boat had fairly passed. This starting up of the Cayuga when she did, brought the two into close proximity, and it was manifest when the Cayuga thus started up, that at the best she must shave the ferry boat very closely. The two vessels were by this movement brought into dangerous proximity, and the boat attempting the manoeuvre must be held responsible for the failure to successfully accomplish it. Furthermore, the statement of the pilot of the Cayuga is, that he made no effort at all to swing his bow to west when the danger of collision became imminent, although the ferry boat was moving past his bow, and although a swing of ten or fifteen feet would have carried him clear. The excuse of the pilot for this inaction is, that it would have required two full turns of the wheel to swing the bow of the Cayuga ten feet, and that there was not time to make these turns. If such be the fact with regard to this boat, it makes clearly manifest the impropriety of starting her engine when within such a short distance of a vessel ahead. If such be not the fact, it was an additional fault in the pilot not to attempt to shift his wheel, while, if, as is stated by some of the witnesses, he did shift his wheel, and was swinging to west at the blow, the positive denial of the fact by the pilot casts doubt upon the claimant's theory of the case; resting so largely as it does upon his testimony.

My conclusion therefore is that the collision in question was caused by the fault of the Cayuga, and that the libellants are entitled to recover of her the amount of their loss. Let a decree be entered accordingly, with an order of reference to ascertain the amount.

[NOTE. For decision overruling the commissioner's report as to damages, see Case No. 2,535. The Hudson River Steamboat Company, claimant, appealed to the circuit court, where the final decree of the district court was affirmed. See Case No. 2,537. From the decree of the circuit court the claimant appealed to the supreme court, which affirmed the decision of the circuit court. The Cayuga v. Hoboken Land & Imp. Co., 14 Wall. (81 U. S.) 270.]